D. Matthew Moscon (6947)
Chaunceton Bird (16402)
**STOEL RIVES, LLP**
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
801.578.6916
matt.moscon@stoel.com
chaunceton.bird@stoel.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MARLON S. BIRD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RESOLUTE CAPITAL PARTNERS LTD., LLC, a Nevada foreign limited liability company; PRMH LENDERS FUND IV, LLC, a Delaware limited liability corporation; PETROROCK MINERAL HOLDINGS, LLC, a Texas limited liability company; HOMEBOUND RESOURCES, LLC, a Texas limited liability corporation; HOMEBOUND, INC., a Texas corporation; MERCURY OPERATING, LLC, a Texas limited liability company; HOME BOUND FINANCIAL GROUP, LP, a Texas corporation; STEFAN TOTH, an individual; TED ETHEREDGE, an individual; PABLO CORTEZ, an individual; SHELLY PERDUE, an individual; THOMAS POWELL, an individual; WARREN TARYLE, an individual; ROGER A. CRABB, an individual; JACQUELINE KUIPER, an individual; CODY FLORES, an individual; JASON BLAKE, an individual; LIVE ABUNDANT, a Utah limited liability company; DOES 1–20;<br><br>Defendants. | **COMPLAINT**<br><br>Civil Case No. 2:20-cv-397-HCN<br><br>The Honorable Judge Howard C. Nielson, Jr. |

Plaintiff Marlon S. Bird, through counsel and pursuant to the Federal Rules of Civil Procedure, hereby complains against Defendants Resolute Capital Partners LTD., LLC, PRMH Lenders Fund IV, LLC, PetroRock Mineral Holdings, LLC, HomeBound Resources, LLC, HomeBound, Inc., Home Bound Financial Group, LP, Mercury Operating, LLC, Stefan Toth, Ted Etheredge, Pablo Cortez, Shelly Perdue, Thomas Powell, Warren Taryle, Roger A. Crabb, Jacqueline Kuiper, Cody Flores, Jason Blake (collectively, the "RCP Parties"), and Live Abundant (all defendants collectively referred to as "Defendants"), and alleges as follows:

**NATURE OF ACTION**

1. The RCP Parties are a criminal enterprise that have used a Ponzi scheme to defraud Mr. Bird and steal his retirement savings.

2. After working as a printer for three decades, Mr. Bird had saved almost enough to retire. In an effort to invest prudently, Mr. Bird retained Live Abundant as financial consultants. Live Abundant advised Mr. Bird to invest with the RCP Parties and effectuated the transfer of Mr. Bird's retirement savings—$124,000—into the RCP Parties' control.

3. Shortly after the transfer, Live Abundant disavowed its previous endorsement of the RCP Parties. Mr. Bird then requested that Live Abundant pull his retirement savings out of the RCP Parties' accounts and return it to him. Live Abundant requested that the RCP Parties return Mr. Bird's retirement funds, but the RCP Parties refused, stating that only investors themselves could withdraw funds. When Live Abundant informed Mr. Bird of the RCP Parties' response, Mr. Bird immediately contacted the RCP Parties and requested the return of his $124,000. The RCP Parties refused to return Mr. Bird's retirement.

4. Now, well over one year since Mr. Bird's initial request to have his retirement returned to him, and after repeated requests for the return of his money, the RCP Parties have repeatedly promised to return Mr. Bird's money, but refuse to do so, and Live Abundant has abandoned its client to fend for himself.

5. This Court should prevent further and impending irreparable harm by enjoining the RCP Parties from continuing to retain Mr. Bird's retirement savings and compelling the RCP Parties to return Mr. Bird's $124,000. By refusing to repay Mr. Bird his retirement funds, the RCP Parties are in violation of certain promissory notes and loan agreements. The RCP Parties have used fraud and deception to receive and retain Mr. Bird's retirement funds. By doing so, and particularly in light of present-day market volatility, the RCP Parties are causing Mr. Bird irreparable harm, and should therefore be enjoined.

## PARTIES

6. **Marlon S. Bird** is an individual domiciled and residing in Pleasant Grove, Utah.

7. Upon information and belief, **Resolute Capital Partners LTD., LLC** is a foreign LLC registered in Nevada, with its principal place of business at One Embarcadero Center, Suite 566, San Francisco, California 94111.

8. Upon information and belief, **PRMH Lenders Fund IV, LLC** is a domestic LLC registered in Delaware, with its principal place of business in Dallas, Texas. The members of PRMH Lenders Fund IV, LLC are unknown, as Delaware law does not require the public disclosure of LLC members.

9. Upon information and belief, **PetroRock Mineral Holdings, LLC** is a domestic LLC registered in Texas, with its principal place of business at 6321 Campus Circle Dr. E., Irving,

Texas 75063-2712. PetroRock Mineral Holdings, LLC's sole managing member is Home Bound Financial Group, LP, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965.

10. Upon information and belief, **HomeBound Resources, LLC** is a domestic LLC registered in Texas, with its principal place of business at 6321 Campus Circle Dr. E., Irving, Texas 75063-2712. Homebound Resources, LLC's principal is Home Bound Financial Group, LP, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965.

11. Upon information and belief, **HomeBound, Inc.** is a Texas corporation with its principal place of business in Irving, Texas. HomeBound, Inc.'s principals are Stefan Toth and Ted Etheredge.

12. Upon information and belief, **Home Bound Financial Group, LP** is a domestic limited partnership, with its principal place of business at 6321 Campus Circle Dr. E., Irving, Texas 75063-2712. Home Bound Financial Group, LP's partners are HomeBound, Inc. (General Partner, located at 4948 Eyrie Ct., Grand Prairie, Texas 75052), Love 2 Live, LP (Limited Partner, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965), and 2X5 Enterprises Limited Partnership (Limited Partner, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965).

13. Upon information and belief, **Mercury Operating, LLC** is a domestic LLC, with its principal place of business located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965. Mercury Operating, LLC's principal is Home Bound Financial Group, LP, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965.

14. Upon information and belief, **Stefan Toth** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

15. Upon information and belief, **Ted Etheredge** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

16. Upon information and belief, **Pablo Cortez** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

17. Upon information and belief, **Shelly Perdue** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

18. Upon information and belief, **Thomas Powell** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

19. Upon information and belief, **Warren Taryle** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

20. Upon information and belief, **Roger A. Crabb** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

21. Upon information and belief, **Jaqueline Kuiper** is an individual domiciled and residing in Reno, Nevada.

22. Upon information and belief, **Cody Flores** is an individual domiciled and residing in Dallas or Fort Worth, Texas.

23. Upon information and belief, **Jason Blake** is an individual domiciled and residing in San Francisco, California.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States. Mr. Bird's federal claims are predicated on 15 U.S.C. § 78j and 18 U.S.C. § 1962(c).

25. This Court has supplemental jurisdiction over all other non-federal-question claims pursuant to 28 U.S.C. § 1367 because the other claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

27. Mr. Bird worked for nearly thirty years as a printer in a bindery called Press Publishing, and later Press Media. During this time, Mr. Bird saved for his retirement.

28. In the spring and summer of 2017, Mr. Bird heard radio advertisements sponsored by Live Abundant, wherein Live Abundant advertised certain seminars for potential investors. Mr. Bird began attending the seminars that summer.

29. In the seminars, Live Abundant held itself out as being operated by financial professionals and invited potential investors like Mr. Bird to invest in certain life insurance policies offered by Live Abundant.

30. Live Abundant told Mr. Bird that federal law prevented investors from funding more than 20% of the life insurance policy each year, and that the policies were to be fully funded over the course of five years.

31. While its clients were waiting to fully fund the life insurance policies, Live Abundant offered several investment opportunities. The idea being that (generally speaking) in the

first year, when one was only able to fund 20% of the policy, the other 80% could be parked in a safe, high-interest investment until it could be transferred into the life insurance policy.

32. Live Abundant advised Mr. Bird to invest his retirement savings with the RCP Parties in or around September of 2017.

33. Live Abundant endorsed the RCP Parties as a trustworthy, safe investment opportunity, and informed Mr. Bird that it had visited the RCP Parties' premises in Texas and that it approved of the RCP Parties as a dependable investment group.

34. Live Abundant further advised Mr. Bird to withdraw the retirement savings that Mr. Bird had at that time invested with Fidelity, and advised him to place the funds with GoldStar Trust Company—a self-directed IRA—through which Live Abundant would then direct the funds into the control of the RCP Parties.

35. Mr. Bird trusted Live Abundant's representations and retained its financial professionals as financial consultants.

36. In September of 2017, the RCP Parties communicated to Mr. Bird regarding the integrity of their investment opportunities through certain print and electronic media, wherein the RCP Parties made specific representations regarding "Secured – First Lien Promissory Notes paying 7.5% - 8.0% - 9.0% annual returns with monthly interest payments being offered to qualified Direct Lenders."

37. The RCP Parties made many additional representations and statements to bolster the integrity of their investment opportunities, including by stating that the RCP Parties had sufficient cash reserves to "provide[] a margin of safety for the Lenders."

38. Mr. Bird then followed the counsel of Live Abundant and, on September 27, 2017, transferred his retirement savings from Fidelity to GoldStar Trust Company.

39. Live Abundant then provided Mr. Bird with two promissory notes (one for $44,000 and one for $80,000) and two accompanying loan agreements, the terms of which provided (generally speaking) that Mr. Bird would loan $124,000 to PRMH Lenders Fund IV, LLC—which is wholly owned by PetroRock Mineral Holdings, LLC, the sole managing member of which is Home Bound Financial Group, LP, one of the partners of which is HomeBound, Inc., whose principals are Stefan Toth and Ted Etheredge. Stefan Toth, Ted Etheredge, and other RCP Parties have created a network of corporate entities which include, but are not limited to, the entities named herein as "RCP Parties."

40. The promissory notes Mr. Bird entered into with the RCP Parties are referred to herein as the "Securities." The loan agreements Mr. Bird entered into with the RCP Parties are referred to as the "Loan Agreements."

41. Live Abundant advised Mr. Bird to enter into the Loan Agreements.

42. Pursuant to Live Abundant's counsel, Mr. Bird entered into the Loan Agreements with the RCP Parties on or about December 20, 2017 and January 5, 2018.

43. Mr. Bird agreed to provide the RCP Parties with $124,000 in exchange for certain guaranties, consideration, and assurances that Mr. Bird—the creditor—would be paid back. Both Loan Agreements contained enumerated security interests "in and to the Petro Rock Note IV."

44. Thus, without regard to any language to the contrary in the Loan Agreements, the RCP Parties sold Mr. Bird two promissory notes, which were both securities.

45. Mr. Bird and his spouse also created a life insurance policy with Live Abundant on or about February 6, 2018.

46. Shortly thereafter, in November of 2018, Live Abundant sent its clients an email disavowing its previous endorsement of the RCP Parties, and stating that Live Abundant was no longer affiliated with the RCP Parties. In this same email, Live Abundant provided its clients with the contact information of various individuals within the RCP Parties.

47. Mr. Bird immediately sent emails and paper mail to every listed individual within the RCP Parties and requested the return of his retirement funds.

48. At first, the RCP Parties refused to release Mr. Bird's savings. The RCP Parties cited to provisions in the Loan Agreements wherein the lender (*i.e.*, Mr. Bird) is required to provide a written request for repayment "not less than 60 days prior to Maturity"—with Maturity being defined as "the last day of the month which is 12 months from the Start Date." In other words, since Mr. Bird's loans to the RCP Parties matured on December 31, 2018, and January 31, 2019 (per their December 20, 2017 and January 5, 2018 start dates), he was required to have provided written notice for repayment by November 1, 2018 and December 2, 2018. The RCP Parties claimed that they had not received Mr. Bird's request until a few days after the December 2 deadline.

49. But then, on January 30, 2019, the RCP Parties changed course. The RCP Parties, through their agent Cody Flores, informed Mr. Bird that "our Executive Team has taken a look at both Promissory Notes [and t]hey have agreed to process both principal amounts back to your Goldstar account on 2/25/2019."

50. February 25, 2019, came and went, however, and the RCP Parties did not return Mr. Bird's retirement savings.

51. Mr. Bird again sent multiple emails to the RCP Parties and called them regularly in an attempt to recover his money.

52. Mr. Bird then requested that Live Abundant retrieve his retirement savings from the RCP Parties.

53. Upon information and belief, Live Abundant then sent a request to the RCP Parties to return Mr. Bird's retirement savings to Mr. Bird's GoldStar Trust Account.

54. On March 25, 2019, the RCP Parties sent Live Abundant a letter stating that it had no contractual relationship with Live Abundant, and that any request for retrieval of funds must come specifically from the lender.

55. Over the course of 2019, Mr. Bird provided the RCP Parties with written notice requesting repayment under the Loan Agreements several times, thus satisfying the conditions in the Loan Agreements requiring 60 days' written notice.

56. The RCP Parties acknowledged receipt of Mr. Bird's requests for repayment.

57. On January 7, 2020, in response to Mr. Bird's request for an update on the status of the return of his retirement funds, an agent of the RCP Parties, Jason Blake, told Mr. Bird:

> We have you listed in our system as opted out of renewal. Typically, the return of funds would fall between the 25th of the maturing month through 10 days after. If there is an instance where the repayment would have to come after the 10[-]day window, then you will accrue 18% annualized interest for the number of days over.

58. When, on February 12, 2020, Mr. Bird still had not received his retirement funds from the RCP Parties, he asked Jason Blake for an update on the status of the repayment. Jason Blake called Mr. Bird the next day and assured him that the RCP Parties were processing the

repayment, and that, at any rate, they would be paying him 18% interest based on their default under the terms of the Loan Agreements.

59. The RCP Parties paid Mr. Bird 18% interest for approximately three months, and then informed Mr. Bird that (1) the RCP Parties did not intend to release his retirement savings at any time in the next five years, and that (2) the RCP Parties would no longer be paying the 18% default interest rate.

60. As of the date of filing this Complaint, the RCP Parties have refused to return Mr. Bird's retirement savings.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (Securities Fraud Under § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j) Against the RCP Parties

61. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

62. Mr. Bird relied on certain specific misrepresentations or misstatements made by the RCP Parties, including but not limited to the following:

a. In the autumn and winter of 2017, one or more of the RCP Parties (but particularly including Resolute Capital Partners LTD., LLC, PetroRock Mineral Holdings, LLC, PRMH Lenders Fund IV, HomeBound Resources, LLC, Stefan Toth, Ted Etheredge, and Pablo Cortez) made several representations and statements, both verbally and in emails and other electronic media and printed materials (including the 12-page "Petro Rock Mineral Holdings Fixed Rate Promissory Note" information booklet), regarding the RCP Parties' legitimacy and viability as an

investment option directly to Mr. Bird, as well as to financial companies like Live Abundant with the intention of said representations and statements being communicated to and relied upon by individual investors like Mr. Bird.

b. In the autumn and winter of 2017, the RCP Parties stated that the RCP Parties had sufficient cash reserves to "provide[] a margin of safety for the Lenders."

c. On December 20, 2017, the RCP Parties represented and stated in a promissory note that Mr. Bird's loan under the promissory note to the RCP Parties in the amount of $44,000 would be returned to Mr. Bird if he requested its return in writing "not less than 60 days prior to Maturity."

d. On January 5, 2018, the RCP Parties represented and stated in a promissory note that Mr. Bird's loan under the promissory note to the RCP Parties in the amount of $80,000 would be returned to Mr. Bird if he requested its return in writing "not less than 60 days prior to Maturity."

e. On January 30, 2019, the RCP Parties, through their agent Cody Flores, told Mr. Bird in an email that the RCP Parties' "Executive Team" had "taken a look at both Promissory Notes. They have agreed to process both principal amounts back to your Goldstar account on 2/25/2019."

f. Over the course of 2019, the RCP Parties have repeatedly assured Mr. Bird that they are processing the return of his retirement savings.

g. On January 7, 2020, the RCP Parties, through their agent Jason Blake, represented in an email to Mr. Bird that Mr. Bird had been "opted out of renewal," and that his

retirement savings would be repaid "between the 25th of the maturing month," in this case December and January, "through 10 days after."

h. Throughout the course of their professional relationship, the RCP Parties have repeatedly assured Mr. Bird, both over the phone and in emails, that they are a legitimate investment option with valuable assets and integral business practices.

63. The RCP Parties made these and other misrepresentations and misstatements knowing that they were false.

64. The RCP Parties' misrepresentations and misstatements were regarding the Loan Agreements, under which the RCP Parties sold Mr. Bird the Securities.[1]

65. Based on his awareness of the specific representations enumerated above, as well as other contemporaneous representations from the RCP Parties, Mr. Bird purchased two securities from the RCP Parties.

---

[1] The RCP Parties attempt to disclaim the title of "security" by claiming in the Loan Agreements that "[t]he Note is not considered a security, and accordingly has not been registered with the Securities and Exchange Commission under the Securities Act of 1933, or with any state securities regulatory agency." However, the RCP Parties offer these notes publicly to investors, and both notes are collateral given or pledged to guarantee the fulfillment of an obligation with the assurance that the creditor will be repaid with interest any money or credit extended to the debtor, which is the very definition of a "security." *See* 15 U.S.C. § 78c(10) ("The term 'security' means *any note* . . ., *certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease*, any collateral-trust certificate . . ., transferable share, investment contract . . ., certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, *or in general, any instrument commonly known as a 'security'*; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing . . . ." (emphases added)); *see also SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 351 (1943) (holding that the term "security" was defined by the Securities Act to include "by name *or description* many documents in which there is common trading for speculation or investment" (emphasis added)), *judgment entered*, 53 F. Supp. 714 (N.D. Tex. 1944); *Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982) (defining "instruments found to constitute securities" as those instruments which are "offer[ed] to a number of potential investors"). The RCP Parties cannot sell securities, then attempt to avoid liability under the law by making the conclusory and absurd claim that the Securities are not securities. Indeed, the Loan Agreements themselves contain a "Security Interest" provision detailing the collateral pledged to guarantee the fulfillment of the RCP Parties' obligations with assurances that Mr. Bird will be repaid, with interest, the entire loan amount he extended to the RCP Parties.

66. The RCP Parties' misrepresentations have directly and proximately caused Mr. Bird to suffer serious economic loss in the form of Mr. Bird losing all, or substantially all, of his $124,000 in retirement savings.

67. As a direct and proximate result of the RCP Parties' securities fraud, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the RCP Parties' securities fraud, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs. Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Racketeer Influenced and Corrupt Organizations Act Under 18 U.S.C. § 1962(c))**
**Against the RCP Parties**

68. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

69. The individual entities and individuals making up the RCP Parties are "persons" for purposes of 18 U.S.C. § 1962(c). *See* 18 U.S.C. § 1961(3) (providing that a "'person' includes any individual or entity capable of holding a legal or beneficial interest in property").

70. While some of the persons which constitute the RCP Parties are not formed in a single legal entity, the RCP Parties' shared or common purpose, as well as their maintained ongoing organizational structure through which the persons function as a continuing unit, constitutes an "associate-in-fact enterprise."

71. The RCP Parties are an organization who knowingly commits and/or conspires to the commission of a long-term, organized pattern of criminal racketeering activity.

72. Specifically, the RCP Parties are engaged in the commission of one or more Ponzi schemes, wherein the RCP Parties lure investors into seemingly legitimate investment opportunities which do not actually exist.

73. The RCP Parties defraud investors into thinking that the investors' money is being legitimately invested in certain enumerated assets, when in fact it is not. This fraud is committed using electronic means, such as by email, phone, and wire, and through the traditional mail channels.

74. The RCP Parties, who are based in Texas, are luring in and defrauding investors from multiple states, including Utah, thus having an effect on interstate commerce.

75. The RCP Parties' pattern of racketeering activity has ensnared Mr. Bird and his retirement savings, and has caused, and will continue to cause, irreparable harm.

76. Mr. Bird is accordingly entitled to injunctive relief to prevent further irreparable harm, as well as treble damages and attorneys' fees under 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."). Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**THIRD CLAIM FOR RELIEF**
**(Securities Fraud Under Utah Code § 61-1-1 and Texas Blue Sky Law, Tex. Rev. Civ. Stat. Ann. Art. 581, § 33)**
**Against the RCP Parties**

77. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

78. The RCP Parties are "persons" as defined by Utah's Uniform Securities Act (*see* Utah Code Ann. § 61-1-13(x) (defining "Person" as including, among other entities, individuals, corporations, partnerships, limited liability companies, joint ventures, unincorporated organizations)) and by Texas's Blue Sky Law—Securities (*see* Tex. Rev. Civ. Stat. Ann. art. 581, § 4(B) (containing a similar definition of person as Utah Code Ann. § 61-1-13(x)).

79. The RCP Parties willfully engaged in the creation of a scheme to defraud Mr. Bird.

80. Specifically, and as more thoroughly detailed in the incorporated paragraphs above, the RCP Parties willfully created promissory notes and loan agreements, as well as print and electronic media materials, to give the illusion that the RCP Parties were offering legitimate securities investments backed by valuable assets.

81. The RCP Parties sold Mr. Bird two instruments which the RCP Parties represented as being legitimate securities backed by valuable assets.[2]

82. In fact, the RCP Parties are not a legitimate investment group with valuable assets, and instead are a collection of individuals and entities willfully and maliciously engaged in a scheme to defraud investors.

[2] *See supra* note 1.

83. The RCP Parties made untrue and misleading statements of material fact regarding the Securities they sold to Mr. Bird.

84. The RCP Parties engaged in an act, practice, and course of business which operates as a fraud or deceit upon Mr. Bird and other investors.

85. As a direct and proximate result of the RCP Parties' securities fraud, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the RCP Parties' securities fraud, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs. Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract Under Texas State Law)**

86. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

87. Mr. Bird and the RCP Parties entered into the Loan Agreements on December 20, 2017, and January 5, 2018.

88. The Loan Agreements are valid contracts.

89. Mr. Bird tendered performance under the Loan Agreements by providing the RCP Parties with $124,000.

90. The RCP Parties breached the Loan Agreements by refusing to return Mr. Bird's principal loan of $124,000, despite Mr. Bird providing written notice of cancellation in conformity with the Loan Agreements.

91. As a direct and proximate result of the RCP Parties' breach of contract, Mr. Bird has been damaged in the amount of at least $124,000, and is entitled to recover that amount from the RCP Parties. Pursuant to the Loan Agreements' attorneys' fees provisions, Mr. Bird is also entitled to recover his attorneys' fees in pursuing this action.

**FIFTH CLAIM FOR RELIEF**
**(Fraud Under Utah State Law)**
**Against the RCP Parties**

92. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

93. In order to perpetuate a fraudulent scheme, the RCP Parties repeatedly made false and misleading representations (as more thoroughly detailed in the incorporated paragraphs above) to lure investors like Mr. Bird into investing with the RCP Parties.

94. These false and misleading representations were concerning the presently existing material fact of how Mr. Bird's retirement savings were being invested.

95. The RCP Parties knew their statements were false when they made them.

96. The RCP Parties made these false and misleading representations for the purpose of inducing Mr. Bird to act upon the representations.

97. Mr. Bird, acting reasonably and in ignorance of the falsity of the representations, did in fact rely upon the representations, and was thereby induced to act upon the representations by providing his retirement savings to the RCP Parties.

98. Mr. Bird's acting upon the RCP Parties' misrepresentations has been to Mr. Bird's injury and damage.

99. As a direct and proximate result of the RCP Parties' fraud, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the RCP Parties' fraud, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs. Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**SIXTH CLAIM FOR RELIEF**
**(Aiding and Abetting Under Utah Law)**
**Against All Defendants**

100. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

101. To the extent one or more of the Defendants did not materially participate in the fraud against Mr. Bird, the Defendants aided and abetted the RCP Parties' in their tortious and fraudulent activity.

102. The Defendants knew that the RCP Parties were committing fraud in breach of their duty not to do so.

103. The Defendants substantially assisted and encouraged the RCP Parties in the achievement of their systematic fraud.

104. As a direct and proximate result of the Defendants' tortious acts, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the Defendants' actions, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties, as well as declaratory relief, monetary damages, and attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Conversion Under Utah Law)**
**Against the RCP Parties**

105. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

106. Mr. Bird entrusted his retirement savings with the RCP Parties.

107. Mr. Bird's retirement savings of $124,000 is transferrable property, capable of manual delivery, and not the subject matter of real property, and therefore constitutes chattel.

108. Mr. Bird has, in conformity with the Loan Agreements, requested the return of his chattel.

109. The RCP Parties, without lawful justification, have intentionally refused to return Mr. Bird's chattel.

110. The RCP Parties' refusal to return Mr. Bird's chattel is an act of willful interference with Mr. Bird's chattel which deprives Mr. Bird of its use and possession.

111. As a direct and proximate result of the RCP Parties' conversion, Mr. Bird has been damaged in the amount of at least $124,000—the full value of the chattel. Further, as a direct and proximate result of the RCP Parties' actions, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs. Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**EIGHTH CLAIM FOR RELIEF**
**(Civil Conspiracy Under Utah Law)**
**Against the RCP Parties**

112. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

113. The RCP Parties are a combination of at least 18 individuals and entities.

114. The RCP Parties conspired and agreed on an object to be accomplished, namely, the creation and perpetration of a Ponzi scheme.

115. The RCP Parties had a meeting of the minds on the object to be accomplished and the means through which the RCP Parties would accomplish it.

116. The RCP Parties committed one or more unlawful, overt acts, namely, the swindling and defrauding of Mr. Bird and the conversion of his retirement savings.

117. As a direct and proximate result of the RCP Parties' civil conspiracy, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the RCP Parties' actions, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs. Because the RCP Parties' conduct was sufficiently willful and malicious, Mr. Bird is further entitled to punitive damages.

**NINTH CLAIM FOR RELIEF**
**(Unjust Enrichment Under Utah Law)**
**Against the RCP Parties**

118. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

119. In the event that this Court deems the Loan Agreements to be invalid, void, or otherwise unenforceable, Mr. Bird pleads in the alternative for equitable relief against the RCP Parties.

120. By loaning the RCP Parties $124,000, Mr. Bird conferred and bestowed a substantial benefit on the RCP Parties.

121. The RCP Parties appreciate and have knowledge of this substantial benefit.

122. The RCP Parties have accepted and retained this substantial benefit under circumstances as to make it inequitable for the RCP Parties to retain the benefit without payment for its value.

123. Such circumstances being, the RCP Parties have taken the full value of the $124,000 without compensating Mr. Bird for the full value.

124. As a direct and proximate result of the RCP Parties' retention of this material benefit, Mr. Bird has been damaged in the amount of at least $124,000. Further, as a direct and proximate result of the RCP Parties' actions, Mr. Bird has suffered, and continues to suffer, immediate and irreparable harm, and he is entitled to injunctive relief enjoining the RCP Parties' fraudulent scheme, as well as declaratory relief, monetary damages, and attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty Under Utah Law)**
**Against Live Abundant**

125. Mr. Bird incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

126. Mr. Bird is not financially trained, educated, or licensed.

127. Mr. Bird retained the financial professionals at Live Abundant as his financial consultants, and relied upon them for counsel in making financial decisions.

128. Live Abundant owes its client Mr. Bird a fiduciary duty of care to act in his best interest and to prudently, objectively advise him on financial decisions.

129. Live Abundant owes its client Mr. Bird a fiduciary duty of loyalty to act in his best interest and to defend the financial decisions Live Abundant counsels Mr. Bird to make. This fiduciary duty of loyalty also obligates Live Abundant to use its special skills, training, and education for Mr. Bird's benefit.

130. Mr. Bird reposed absolute trust and confidence in Live Abundant to advise, counsel, and protect Mr. Bird. The RCP Parties' investment structure made Mr. Bird a weaker party with unique vulnerabilities.

131. Live Abundant accepted that trust and confidence from Mr. Bird.

132. Mr. Bird depended on Live Abundant to manage his retirement savings pursuant to its expertise.

133. Live Abundant recommended and endorsed the RCP Parties—which, prior to Live Abundant's endorsement, Mr. Bird was unaware of. Live Abundant assured Mr. Bird that Live Abundant had visited the RCP Parties' facilities and approved of the RCP Parties as a sound, safe investment.

134. Live Abundant had superior knowledge about the RCP Parties that Mr. Bird did not have, such as information about the corporation structure of the RCP Parties, the particularities of the RCP Parties' investment portfolio, and the RCP Parties' history and reputation (or lack thereof).

135. Live Abundant advised Mr. Bird to invest his retirement savings with the RCP Parties.

136. Live Abundant effectuated the transfer of Mr. Bird's retirement savings into the control of the RCP Parties.

137. Shortly thereafter, Live Abundant disavowed its endorsement of the RCP Parties.

138. When Live Abundant's client, Mr. Bird, sought the return of his retirement savings, Live Abundant simply provided Mr. Bird a list of names within the RCP Parties which he could contact.

139. Live Abundant has not made any material effort to defend its client, Mr. Bird, from the fraudulent and tortious actions of the RCP Parties.

140. Despite Mr. Bird's repeated pleas for help in retrieving his retirement savings from the investment that Live Abundant recommended, endorsed, and moved Mr. Bird's money into, Live Abundant has refused to provide any assistance.

141. Live Abundant's relationship with Mr. Bird (as financial consultant-client) constitutes a fiduciary relationship.

142. Live Abundant's counsel to Mr. Bird to invest in the RCP Parties, as well as Live Abundant's refusal to assist Mr. Bird in retrieving his retirement savings, was a breach of Live Abundant's fiduciary duty to Mr. Bird.

143. As a direct and proximate result of Live Abundant's breach, Mr. Bird has been damaged in the amount of at least $124,000.

**REQUEST FOR RELIEF**

WHEREFORE, in addition to the requests made through this Complaint, Mr. Bird respectfully requests that this Court enter judgment against Defendants in the following manner:

1. An award for monetary damages in the amount of $124,000.

2. An award for treble damages against the RCP Parties under the Second Cause of Action for the RCP Parties' violation of the Racketeer Influenced and Corrupt Organizations Act.

3. An award of punitive damages against the RCP Parties pursuant to the RCP Parties' willful and malicious conduct.

4. An award of attorneys' fees and costs in an amount to be proven at trial, plus pre- and post-judgment interest to the maximum extent allowable under the applicable statutes.

5. In the alternative to Mr. Bird's legal damages, Mr. Bird seeks an equitable award for unjust enrichment against the RCP Parties in the amount of $124,000.

6. A Declaration that the RCP Parties are unlawfully withholding the return of Mr. Bird's retirement savings in violation of the Loan Agreements.

7. A preliminary and permanent injunction enjoining the RCP Parties from continuing to interfere with Mr. Bird's retirement savings, and compelling the RCP Parties to immediately return the $124,000 Mr. Bird loaned to the RCP Parties under the Loan Agreements.

8. For such other and further relief as the Court deems just and proper.

Dated: June 22, 2020

STOEL RIVES LLP

Chaunceton B. Bird
D. Matthew Moscon

*Attorneys for Plaintiff*

Plaintiff's Address

Marlon S. Bird
356 S. 1210 E.
Pleasant Grove, UT 84062